IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jessica Edwards | : | |
| 4405 Lanark Road | : | |
| Center Valley, PA 18034 | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| v. | : | Complaint and Jury Demand |
| | : | |
| Lehigh Township | : | |
| 1069 Municipal Road | : | |
| Walnutport, PA 18088 | : | |
| | : | |
| and | : | |
| | : | |
| Scott M. Fogel, in his individual capacity | : | |
| 1329 Woodlawn Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

AND NOW COMES, Plaintiff, Jessica Edwards, by and through undersigned counsel, Ansa

Assuncao LLP, and hereby brings this Complaint against Defendants, Lehigh Township and

Scott M. Fogel, in his individual capacity, and in support thereof, avers as follows:

## PRELIMINARY STATEMENT

1.      This matter arises from the extended, unremitting, and unlawful harassment,

discrimination and abuse suffered by Plaintiff, Jessica Edwards, during the five (5) years she

served as a police officer with the Lehigh Township Police Department, inflicted by the

Township Chief of Police, Defendant, Scott M. Fogel.  During this time, due to her gender,

Plaintiff was singled out and persistently disparaged, belittled, sexually objectified, and insulted

by the Chief of Police, she was physically accosted by him, she was denied opportunities for

1

professional development and growth, she was retaliated against for complaining of mistreatment, and she was ultimately placed into such a hostile, toxic and intolerable work environment that she was forced to resign for her own well-being. During this time, Defendant, Lehigh Township had actual knowledge of Defendant Fogel's mistreatment of Plaintiff but took absolutely no action to protect Plaintiff or to hold Defendant, Fogel accountable. Plaintiff brings this Action against Lehigh Township for violations of Title VII of the Civil Rights Act of 1964 and for violations of the Pennsylvania Human Relations Act, and against Defendant, Scott M. Fogel, in his individual capacity for battery, defamation and intentional infliction of emotional distress under this Court's pendant and supplemental jurisdiction.



**(Plaintiff, Jessica Edwards, during her first year of employment with the Lehigh Township Police Department.)**

## **PARTIES**

2.      Plaintiff, Jessica Edwards ("Plaintiff") is an adult female residing at 4405 Lanark Road, Center Valley, Pennsylvania 18034.

3.      Defendant, Lehigh Township (the "Township") is a municipality in the Commonwealth of Pennsylvania and a Political Subdivision as defined under 101 Pa. Code § 23.221, with a principal office located at 1069 Municipal Road, Walnutport, PA 18088.

4.      The Township consists of multiple departments, all of which are operated, funded, and supervised by Township Administration and the Township Board of Supervisors.

5.      The Township, including all of its departments, employs more than fifteen (15) full-time, year-round employees.

6.      The Lehigh Township Police Department, located at 1043 Municipal Road, Walnutport, Pennsylvania 18088, is one of the departments of the Township.

7.       Defendant, Scott M. Fogel ("Fogel"), is an adult male residing at 1329 Woodlawn Street, Whitehall, Pennsylvania 18052.

8.      Fogel, was, at all relevant times, and still is, the Chief of the Lehigh Township Police Department.

9.      The Township, at all relevant times, acted by and through its employee, Fogel, and other employees, agents and/or ostensible agents, all of whom were at all times acting or failing to act within the course and scope of their employment, agency and/or ostensible agency and under color of their authority.

10.     Plaintiff brings claims against the Township under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), under the Pennsylvania Human

Relations Act, 43 P.S. § 951 et seq. ("PHRA"), and against Fogel, in his individual capacity, for common law battery, defamation and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

11.     The Court exercises original subject-matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because they arise under the laws of the United States, and she seeks redress for violations of federal law.

12.     Pursuant to 28 U.S.C. §1367, this Court also has pendent and supplemental jurisdiction over Plaintiff's state law claims against the Township under the PHRA and over her common law tort claims against Fogel, because they form part of the same case or controversy under Article III of the United States Constitution.

13.     All of the acts and/or omissions giving rise to Plaintiff's claims occurred within Lehigh Township, Northampton County, in the Eastern District of Pennsylvania.

14.     Both jurisdiction and venue are proper.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     On or about April 25, 2022, Plaintiff dual filed a complaint against the Lehigh Township Police Department, Lehigh Township, and Fogel, with the Pennsylvania Human Relations Commission ("PHRC") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and harassment in violation of the Pennsylvania Human Relations Act and Title VII of the Civil Rights Act of 1964.

16.     Pursuant to the work sharing agreement between the agencies, the PHRC assumed the responsibility for processing the complaint.

17.     On April 28, 2023, the PHRC served Plaintiff with written notification of her right to file a lawsuit on her state law claims.

18.     On June 20, 2023, the EEOC served Plaintiff with written notice of her right to file a lawsuit on her federal claims.

19.     Plaintiff has exhausted her administrative remedies, and timely files this action seeking relief under both federal and state law.

20.     To the extent that any statute of limitations applies to Plaintiff's pendant state law claims, that statute of limitations is subject to equitable tolling under common law and pursuant to § 962(e) of the PHRA.

## FACTUAL BACKGROUND

21.     In 2017, Plaintiff attended the Allentown Police Academy, graduating near the top of her class.

22.     On or about February 5, 2018, Plaintiff was hired by the Lehigh Township Police Department as the department's first and only Act 120 certified female police officer.

23.     During the first year of Plaintiff's service as a police officer with the Township, she developed a strong bond with her fellow officers and was seemingly taken under the wing of Chief Fogel.

24.     Plaintiff's performance at work was upstanding and she excelled at community policing.

25.     After approximately one (1) year, however, Fogel began to display an inappropriate, unprofessional, and intense interest in Plaintiff's personal life.

### Sexualized Comments About Plaintiff's Social Media Activity

26.     In late February 2019, Fogel began scrutinizing Plaintiff's social media activity and spoke with a subordinate, commenting that certain pictures of Plaintiff in a bicycling outfit posted to her Instagram page were too revealing or scandalous.

27.     Although nothing posted by Plaintiff was lewd or indecent in any way or violated any social media policy of the Township or of the Department, Fogel, acting under color of his authority as the Chief of Police, nevertheless instructed a subordinate on the force to "warn" Plaintiff about the content of her social media postings.

28.     Fogel's act of singling out Plaintiff, under color of his authority, disparaging her to a third party, and instructing the third party to issue her a warning caused Plaintiff to feel objectified as a woman and experience distress and anxiety and began to transform the Lehigh Township Police Department into a hostile work environment.

**<u>Intrusive Questioning About Plaintiff's Personal Life</u>**

29.     Several months after Fogel's disparagement of Plaintiff regarding her social media activity, in or around May or June of 2019, he ordered Plaintiff into his office and proceeded to interrogate her regarding her personal, off-duty life, and demanded to know whether she was having an intimate, sexual relationship with another police officer on the force ("Officer D").

30.     Although no Township or Department policy existed prohibiting or restricting interpersonal relationships between police officers on the force, Fogel, under color of his authority as the Chief of Police, intrusively questioned her and berated her for what he believed was Plaintiff's romantic involvement and sexual relationship with Officer D.

31.     This interrogation about her personal life, to which no male officers had been subjected, greatly increased Plaintiff's emotional distress and anxiety, and caused the Lehigh Township Police Department to become an increasingly hostile work environment.

32.     The following year, Fogel's treatment of Plaintiff was markedly changed from collegial and professional to disdainful, indifferent, and condescending.

**Fogel Physically Exposes Himself  To Plaintiff While On Duty**

33.     In late May of 2020, after Plaintiff had been on the force for just over two (2) years, Fogel summoned Plaintiff into his office, where he met with her alone while both were on duty.

34.     Without warning, while facing Plaintiff, without Plaintiff's consent or invitation, Fogel lifted his shirt above his chest, and deliberately exposed his stomach, navel, nipples and chest to her.

35.     Plaintiff felt personally violated by Fogel's deliberate exposure of his body, and experienced increased emotional distress and anxiety, all of which caused the Lehigh Township Police Department to become an extremely hostile work environment.

**Fogel Suggests Plaintiff Has A Communicable Venereal Disease**

36.     Subsequently, in or around May or June of 2020, while standing in a common area of the Lehigh Township Police station in the presence of other police officers and/or Township employees, during the workday, while on duty, Fogel verbally stated, "I'm surprised [Officer D's] dick hasn't fallen off."

37.     Plaintiff, and all persons who heard the comment, understood Fogel's statement to mean, by clear implication and by reference to Fogel's prior interrogation of her regarding her personal life, that Officer D was likely to contract venereal disease through sexual intimacy with Plaintiff.

38.     Plaintiff, and all persons who heard the comment, understood Fogel's statement to be clear vilification and disparagement of Plaintiff and a clear suggestion of Plaintiff's sexual promiscuity.

39.     Plaintiff felt immediate embarrassment, humiliation, extreme emotional distress and anxiety, all of which caused the Lehigh Township Police Department to become an increasingly hostile and unlivable work environment.

40.     In the months that followed, Fogel expressed no remorse for his hostile, belittling and harassing behavior toward Plaintiff, but instead, escalated his harassment to include unconsented physical contact with Plaintiff.

**<u>Fogel Places His Hands Upon Plaintiff Without Her Consent</u>**

41.     In the early winter of 2020, while Plaintiff was on duty seated at a computer desk at the Lehigh Township Police station, Fogel approached her from behind, gripped her hair, and forcefully snapped her head back by her hair, pulling her toward the midsection of his body and torso.

42.     Plaintiff felt immediate shock, pain, discomfort, embarrassment, humiliation, emotional distress, and anxiety.

43.     Plaintiff was frightened and felt powerless as Fogel exercised his power and status as the Chief of Police to physically accost her in a manner with sexually abusive overtones, all of which added to the extreme hostility of the work environment.

44.     On or about December 23, 2020, while on duty, Plaintiff was standing in the Lehigh Township parking garage behind the trunk of a parked vehicle in the presence of a Lehigh Township police sergeant and a male Township employee, when Fogel approached her and again, gripped her hair from behind, and forcefully snapped her head backwards and towards the ground causing Plaintiff's body to twist and caused her to lose footing.

45.     Plaintiff again felt immediate shock, pain, discomfort, embarrassment, humiliation, emotional distress, and anxiety, fear, and powerlessness as Fogel exercised his

8

power and status as the Chief of Police to physically accost her in a manner with sexually abusive overtones and in the presence of other people, all of which added to the extreme hostility of the work environment.

46.     The police sergeant who witnessed Fogel's assault against Plaintiff made an official report to the Township.

**The Township Is Made Aware Of Fogel's Abuse And Does Nothing**

47.     Upon receiving the report, the Township took no meaningful action to:

a.  Investigate the incident;

b.  Discipline Fogel for unconsented physical contact with Plaintiff;

c.   Deliver remedial education and/or training to Fogel and the Lehigh Township Police Department regarding appropriate boundaries and unconsented physical contact between Township employees on and off duty; or

d.  Render any support or assistance to Plaintiff.

48.     The fact that the Township was made aware of Fogel's outrageous assaultive behavior against Plaintiff and failed to take any action only emboldened Fogel, and further demoralized Plaintiff, heightened her feelings of helplessness, and greatly contributed to the seethingly hostile work environment that the Lehigh Township Police Department had become.

49.     As a result, Fogel's demeanor toward Plaintiff in the following year continued to be contemptuous, dismissive and condescending.

50.     Plaintiff's cumulative experiences of having been interrogated about her personal life by Fogel, being defamed and disparaged for alleged sexual promiscuity by Fogel, and being physically battered by Fogel on two (2) occasions with no consequences, left Plaintiff in a state

of constant distress, anxiety, helplessness, and hypervigilance, as the Lehigh Township Police Department had become a thoroughly toxic and hostile work environment.

**Fogel Uses Work Communications To Comment on Plaintiff Legs and Genital Region**

51.     Under color of his authority, Fogel, on more than one occasion, also attempted to mask his mistreatment and harassment of Plaintiff through the presentation of ostensibly work-related informational messages.

52.     On or about October 14, 2021, Fogel disseminated an email to the Police Department about "No Shave November."[1]  In his email, Chief Fogel suggested that "*ladies* in the department" could choose to grow "hairy legs" to participate.

53.     As the only female in the Department and based upon her accumulated experiences with Fogel, Plaintiff felt singled out as a target for sexualized ridicule, mocking and derision by this email.

54.     Fogel made his sexualized and harassing intent even more clear later in the same month, when he personally approached Plaintiff, while on duty, stood in front of her in the police station in the presence of a male police officer, and stated, with a condescending and lecherous grin, "If you don't want to shave *whatever*, you don't have to."

55.     When he used the word "whatever," Fogel clearly signaled to Plaintiff, and to the other officer present, that he was referring to Plaintiff's genital/pubic region and singling her out as a female, humiliating, harassing, and intimidating her.

---

[1] A concept in which various organizations throughout the country, including police departments, refrain from shaving for one month in order to raise cancer awareness and to raise funds for cancer treatment.

**Fogel Mocks Sexual Harassment Training Using It As An Occasion To Engage In Sexual Harassment**

56.     As another example of Fogel's deceptive use of ostensibly work-related communication as a pretext for veiled harassment, during the time when Fogel's mistreatment of Plaintiff was occurring, Fogel published and required all officers to view the police department's "Values Oriented Ten Minute Training," a PowerPoint presentation *covering sexual harassment* that is largely narrated and presented, in audio, by Fogel, himself.

57.      One slide in the presentation contains the following text directed to police department employees: "Don't pull your dick out at work."

58.     Corresponding with the vulgar and inappropriate message, the presentation contains the following crudely drawn graphic illustration:



59.     This slide—contained within the Lehigh Township Police Department's *sexual harassment training*— was offensive, *sexually harassing* in its own right, and inappropriate, and was a forceful reminder to Plaintiff that neither the Township nor the police department had any intention taking workplace sexual harassment seriously, had any understanding of what actually

11

constitutes sexual harassment, and completely lacked any commitment to ensure a safe work environment for Plaintiff.

60.     Although Plaintiff was initially in a state of shock and disbelief as the hostile work environment set in and she did not voice her concerns, as the circumstances worsened, she attempted to stand up for herself by directly, but tactfully, expressing herself to Fogel, and by speaking to fellow officers of her extreme distress and anxiety.

**Retaliation – Fogel Demands Privileged Medical Information From Plaintiff**

61.     Rather than taking notice of Plaintiff's concerns and attempting to modify his behavior, Fogel instead became emboldened, and commenced a campaign of retaliation.

62.     In the first week of November of 2021, Plaintiff, a single mother, experienced a medical emergency involving her minor daughter, who is in her sole custody.

63.     As a result of the medical emergency, Plaintiff sought medical care for both herself and her daughter.

64.     Due to the medical emergency, Plaintiff was late for a work training event.

65.     Plaintiff generally explained the reason for her lateness, while at the same time protecting both her daughter's privacy and her own. Fogel initially accepted Plaintiff's explanation and took two (2) hours of Plaintiff's comp time.

66.     Approximately 1 ½ weeks later, however, Fogel reversed and began to demand that Plaintiff provide a doctor's note to verify her explanation.

67.     Fogel did not make similar demands of other officers on the force, but instead singled out Plaintiff, an otherwise exemplary officer, as a means of exacting punishment for Plaintiff's complaints of harassment and ill-treatment.

68.     The President of the Lehigh Township Police Association informed Fogel that the demand violated the terms of Plaintiff's employment contract, but nevertheless furnished Fogel with a doctor's note from Plaintiff's primary care provider that generally verified that Plaintiff was late for training due to a family medical emergency.

### Retaliation – Fogel Personally Contacts Plaintiff's Doctor's Office And Sends A Uniformed Police Officer To The Office to Demand Privileged Medical Information

69.     Despite receiving a doctor's note confirming Plaintiff's family medical issue, over the next five (5) months, Fogel escalated his confrontation with Plaintiff by personally calling Plaintiff's doctor's office, sending a uniformed police officer to her doctor's office to demand verification of her family medical issue, and threatening her verbally and in writing with discipline or termination, all with the intent of increasing Plaintiff's distress and anxiety and further adding to the toxicity of an already hostile work environment.

### Retaliation – Fogel Subjects Plaintiff To Unwarranted, Extreme And Disproportionate Disciplinary Action

70.     Fogel's harassment and punitive retaliation against Plaintiff regarding the November 2021 training event reached a crescendo when he convened a *Loudermill Hearing* to subject Plaintiff to the professional equivalent of a mock execution.

71.     Plaintiff was not terminated from employment as a result of the hearing, but was left feeling overwhelmed with extreme emotional distress, anxiety, humiliation, and helplessness.

72.     Fogel's handling of Plaintiff's lateness to the November 2021 training event was entirely disparate from his handling of similar personnel issues involving male officers on the force and was intentionally severe, disproportionate, and prolonged,  for the purpose of punishing Plaintiff for her complaints about Fogel's inappropriate, harassing, and abusive behavior toward her.

**Retaliation – Fogel Forces Plaintiff To Submit A "Victim's Rights Form" for a Dog Bitten by another Dog**

73.     Fogel's retaliation has also included reviewing for approval virtually each and every incident and investigation report draft and submitted by Plaintiff during her employment with the Lehigh Township Police Department after she voiced her complaints about his inappropriate, harassing, and abusive behavior toward her and subjecting the reports to a level of scrutiny to which the reports of male officers on the force are not subjected.

74.     In the process of reviewing Plaintiff's reports, in or around March, 2022, Fogel rejected one report involving a fight between two (2) dogs, in which one dog was identified as the aggressor, subjecting Plaintiff to the absurd and humiliating requirement that she return to the scene and turn in  a "victim's rights form" for the dog that was bitten.

**Retaliation – Fogel Attempts To Punish Plaintiff For Off Duty Speech And Civic Participation**

75.     Fogel's obsession with finding fault with Plaintiff as a pretext for additional punishment and retaliation has extended to Plaintiff's constitutionally protected off duty speech and civic activity.

76.     In or around March 2021, while off duty, Plaintiff attended and made comments regarding traffic enforcement and public safety at a public meeting of Upper Saucon Township, where she resides. Plaintiff was expressing her concern for the safety of her children and other members of the community due to the behavior of motorists in the streets. Her comments were summarized accurately in the minutes of the meeting, which are publicly available on the Township's website.

77.     The local press covered the township meeting however, and quoted Plaintiff's comments inaccurately in the newspaper, falsely implying that Plaintiff disparaged her community's police department.

78.     Fogel confronted Plaintiff about the newspaper's rendition, and rather than verifying the accuracy of the quote, even though she was off duty acting as private citizen and resident of the community when she made her statements, he accused her of "misuse of police powers."

79.     In an attempt to explain the true nature of Plaintiff's comments, the Upper Saucon Township Police Chief, who was present at the meeting, informed Fogel that Plaintiff was wrongly quoted.

80.     In spite of now being informed by a fellow Police Chief that Plaintiff had made no inappropriate comments, and in spite of knowing that Plaintiff was acting in her private capacity, while off duty, Fogel nevertheless gave Plaintiff a written reprimand for "misuse of police powers." When Plaintiff refused to sign the reprimand, based upon the lack of a basis and Plaintiff's refusal to concede, Fogel grudgingly withdrew it.

81.     Fogel's demeanor toward Plaintiff continued to be disdainful, dismissive, and condescending after the aborted attempt to wrongfully reprimand her as he developed new methods of retaliating against her and punishing her for her earlier complaints of his inappropriate, harassing, hostile and abusive behavior.

**Retaliation – Fogel Denies Plaintiff Professional Education And Training Opportunities**

82.     In or around February 2022, Plaintiff sought an opportunity to participate in an undercover sting operation which would have been a valuable career advancement opportunity

15

and training opportunity and would have given Plaintiff career-enhancing experience in police undercover work.  Prior to this time, earlier in her tenure, Plaintiff had communicated her interest in this type of work to Fogel, and he was aware as her Chief of Police, that she was professionally suited for the operation.

83.    Plaintiff's request to participate in the undercover sting was <u>denied</u>, purportedly due to "overtime issues."  However, Fogel gave multiple other officers, all males, comp time or authorized overtime for them to assist with the Police Department's accreditation process.

84.    Plaintiff offered to participate in the sting, which lasts 8 hours, without any compensation, as a volunteer, just to gain the valuable career-furthering experience.  Her request was still denied.

85.    On March 16, 2022, the whole Police Department received an email about drug task force training available through Northampton County.  Of all of the officers in the Lehigh Township Police Department, Plaintiff was the only one who had not received the training and who was not already on the Task Force.

86.    Prior to this time, earlier in her tenure, Plaintiff had communicated her interest in this type of training to Fogel, and he was aware as her Chief of Police, that she was professionally suited for this type of work and would professionally benefit from the training. Fogel further knew that the Lehigh Township Police Department, and the Lehigh Township community would benefit from the inclusion of a competent female officer in the training.

87.    The next day, Plaintiff submitted a request to attend the training.

88.    Fogel denied Plaintiff's request to participate in the training, offering the vague and evasive explanation that he would "not be approving anyone for the training." The denial was clearly an attempt to mask Fogel's intent of punishing Plaintiff for her prior complaints

about him because no other officers had actually requested the training, and all of the other officers, all males, had already received the training and were on the Task Force.

**The Retaliation Continues After Plaintiff Files Her PHRC/EEOC Complaint**

89.     On or about April 25, 2022, Plaintiff dual filed her complaint against the Lehigh Township Police Department, Lehigh Township, and Fogel, with the PHRC and the EEOC, alleging discrimination and harassment in violation of state and federal law.

90.     Prior to filing the Complaint, and for many months after, Plaintiff attempted to obtain copies of her annual performance reviews through her supervising Sergeant.

91.     For over half a year, Fogel directed Plaintiff's supervising Sergeant to withhold the annual reviews, without explanation or legal cause, thereby attempting to limit her ability to gather evidence in support of her case.

92.     Each and every day that Plaintiff continued to work as a Lehigh Township Police officer, given the accumulated harassment, abuse, mistreatment, retaliation and generally dismissive, condescending and hostile demeanor of Fogel, constituted an assault on her well-being and caused ever compounding emotional distress and anxiety.

93.     Due to the severe impact of the toxic and hostile work environment, Plaintiff has sought and received mental health therapy and counselling.

94.     In March of 2023, due to the severity of Plaintiff's emotional distress and anxiety and related health issues, all caused by the harassing, abusive, unprofessional, and retaliatory behavior of Fogel, and the toxic, unlivable, and hostile work environment he created, her doctor ordered her to stay out of work.  She remained out of work, on her doctor's orders, through April and May of 2023, utilizing comp time and sick time.

**Retaliation – Fogel Attempts To Investigate A False, Debunked Claim Made Against Plaintiff Of Homosexual Promiscuity In Order to Harass And Humiliate Her**

95.     In April and May of 2023, one (1) year after Plaintiff's complaint was filed with the PHRC and the EEOC, Fogel, assuming he had been cleared of all wrongdoing, paid at least two (2) visits, while on duty, to a female resident of the community ("Resident H") who had previously falsely accused Plaintiff of misconduct.

96.     The specific allegation of misconduct by Resident H, which was entirely false and never originally taken seriously or investigated by the Lehigh Township Police Department, was that Plaintiff had carried on an intimate sexual affair with Resident H's same-sex ex-partner while Plaintiff was on duty.

97.     Plaintiff learned of Fogel's visits to Resident H at the end of the second week of May 2023.

98.     Fogel's purpose in visiting with Resident H was to resurrect the false claim of Plaintiff's alleged misconduct, in order to subject Plaintiff to a degrading, embarrassing, and unfathomably distressful sham investigation upon her return to full duty.

99.      While Plaintiff was struggling with extraordinary emotional distress, anxiety and a sense of complete helplessness prior to May of 2023, the prospect of returning to work to have her morals, professionalism, intimate sexual behavior and sexual orientation, falsely targeted, vilified, questioned and impugned, based upon long-debunked accusations, finally broke her spirit completely.

**Plaintiff Resigns From Her Position As A Police Officer Under Duress Because She Can No Longer Withstand the Abuse**

100.    Under duress, based upon years of harassing, abusive, unprofessional, and retaliatory behavior of Fogel, and the toxic, unlivable, and hostile work environment he created,

and now facing the likelihood of a soul-destroying investigation into false accusations, on May 15, 2023, Plaintiff tendered her resignation, effective June 1, 2023.

101.    None of the aforementioned abusive, harassing and unlawful conduct by Fogel was welcomed, solicited, or in any way invited by Plaintiff.

102.    Due to the malicious, wrongful, tortious and abusive conduct of Fogel, and the complicity of the Township, Plaintiff has suffered and will continue to suffer, extreme emotional distress, depression, anxiety and related health problems, has traumatically inflicted trust issues, and has irreparably harmed self-esteem and self-confidence, all to her great detriment and loss.

103.    Due to the malicious, wrongful, tortious and abusive conduct of Fogel, and the complicity of the Township, Plaintiff has been forced to resign from her law enforcement position, at which she excelled, and for which she was trained, and has consequentially lost a career of future earnings, promotions, health benefits, and a pension, all to her great detriment and loss.

## CAUSES OF ACTION

### COUNT I

### PLAINTIFF, JESSICA EDWARDS

### V.

### DEFENDANT, LEHIGH TOWNSHIP

### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

104.    Plaintiff incorporates all prior paragraphs as though set forth fully herein at length.

105.    During her employment as a Police Officer with the Lehigh Township Police Department, Plaintiff was subjected to extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, the Chief of Police and a supervisory employee of the Township, for whose acts and/or omissions the Township is directly and vicariously liable in violation of Title VII of the Civil Rights Act of 1964.

106.    During her employment as a Police Officer with the Lehigh Township Police Department, the Township had actual and/or constructive knowledge of the extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, yet in spite of such knowledge, took no meaningful steps to protect Plaintiff, to prevent further abusive behavior, and/or to correct ongoing unlawful and abusive behavior.

107.    The extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel directed at Plaintiff was due to the fact that Plaintiff is a female.

108.    The extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel directed at Plaintiff was so severe that any reasonable female in Plaintiff's position would find her work environment to be hostile.

109.    Plaintiff believed her work environment at the Lehigh Township Police Department to be hostile and abusive as a result of Fogel's wrongful and malicious conduct.

110.    Plaintiff suffered significant adverse employment actions affecting her ability to professionally develop and advance, in addition to unprofessional insults, personal degradation, and unconsented physical contact.

111.    As a result of the sexual harassment, Plaintiff has suffered extreme economic and non-economic damages.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Lehigh Township, and in her favor, and award her compensatory damages, punitive damages, attorney's fees, costs of suit, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

## COUNT II

## PLAINTIFF, JESSICA EDWARDS

## V.

## DEFENDANT, LEHIGH TOWNSHIP

## SEXUAL HARASSMENT – CONSTRUCTIVE DISCHARGE

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

112.    Plaintiff incorporates all prior paragraphs as though set forth fully herein  at length.

113.    During her employment as a Police Officer with the Lehigh Township Police Department, Plaintiff was subjected to extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, the Chief of Police and a supervisory employee of the Township, for whose acts and/or omissions the Township is directly and vicariously liable in violation of Title VII of the Civil Rights Act of 1964.

114.    As a result of the extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, Plaintiff's working conditions became so intolerable that she was compelled to resign.

115.    Plaintiff's resignation was submitted only as a result of the persistent, unrelenting harassment and abuse by Fogel, the intolerable and hostile work environment created by Fogel,

and the extreme duress Plaintiff experienced due to Fogel's malicious actions and retaliation against Plaintiff.

116.    As a result of the resignation, tendered only under extreme duress, Plaintiff lost a future career and all of the financial, tangible and intangible benefits that would have gone along with it.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Lehigh Township, and in her favor, and award her compensatory damages, punitive damages, attorney's fees, costs of suit, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

**COUNT III**

**PLAINTIFF, JESSICA EDWARDS**

**V.**

**DEFENDANT, LEHIGH TOWNSHIP**

**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**

**<u>PENNSYLVANIA HUMAN RELATIONS ACT</u>**

117.    Plaintiff incorporates all prior paragraphs as though set forth fully herein   at length.

118.    During her employment as a Police Officer with the Lehigh Township Police Department, Plaintiff was subjected to extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, the Chief of Police and a supervisory employee of the Township, for whose acts and/or omissions the Township is directly and vicariously liable in violation of the Pennsylvania Human Relations Act.

119. During her employment as a Police Officer with the Lehigh Township Police Department, the Township had actual and/or constructive knowledge of the extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel, yet in spite of such knowledge, took no meaningful steps to protect Plaintiff, to prevent further abusive behavior, and/or to correct ongoing unlawful and abusive behavior.

120. The extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel directed at Plaintiff was due to the fact that Plaintiff is a female.

121. The extreme, pervasive, ongoing, and unlawful abuse and harassment by Fogel directed at Plaintiff was so severe that any reasonable female in Plaintiff's position would find her work environment to be hostile.

122. Plaintiff believed her work environment at the Lehigh Township Police Department to be hostile and abusive as a result of Fogel's wrongful and malicious conduct.

123. Plaintiff suffered significant adverse employment actions affecting her ability to professionally develop and advance, in addition to unprofessional insults, personal degradation, and unconsented physical contact.

124. As a result of the sexual harassment, Plaintiff has suffered extreme economic and non-economic damages.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Lehigh Township, and in her favor, and award her compensatory damages, punitive damages, attorney's fees, costs of suit, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

**COUNT IV**

**PLAINTIFF, JESSICA EDWARDS**

**V.**

**DEFENDANT, SCOTT M. FOGEL, IN HIS INDIVIDUAL CAPACITY**

**<u>BATTERY</u>**

125.     Plaintiff incorporates all prior paragraphs as though set forth fully herein at length.

126.     On or about December 23, 2020, Defendant Fogel did commit a battery upon Plaintiff's person when, with deliberation, intent, negligence and recklessness, and without Plaintiff's consent, he forcefully grabbed Plaintiff by the hair and jerked her head, causing her to lose balance and experience pain.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Scott M. Fogel, and in her favor, and award her compensatory damages, punitive damages, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

**COUNT V**

**PLAINTIFF, JESSICA EDWARDS**

**V.**

**DEFENDANT, SCOTT M. FOGEL, IN HIS INDIVIDUAL CAPACITY**

**<u>DEFAMATION - SLANDER</u>**

127.     Plaintiff incorporates all prior paragraphs as though set forth fully herein  at length.

128.    In or around May or June of 2020, Defendant Fogel did make a statement to persons present in the Lehigh Township Police Department headquarters to wit: "I'm surprised [Officer D's] dick hasn't fallen off."

129.    The statement was intended by Fogel, and understood by its audience, to unambiguously imply that Plaintiff:

     a.   Is sexually promiscuous; and

     b.   Has a communicable venereal disease; and

     c.   The alleged  communicable venereal disease is likely to infect and grievously injure Officer D, a person who Plaintiff believed, and rumor suggested, was involved in an intimate sexual relationship with Plaintiff.

130.    Fogel's crude statement, impugning Plaintiff's private, sexual behavior, and alleging that she was infected with a communicable venereal disease was intended to harm her reputation, subject her to ridicule, shunning and isolation, and was false and defamatory.

131.    Fogel's statement, made in the presence of other police officers within the same department, all of whom under his supervision as Chief of Police, was made with malice and reckless indifference to the statement's falsity, and was an abuse of the conditionally privileged relationship and occasion.

132.    Plaintiff suffered harm as a result of Fogel's false and defamatory statement.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Scott M. Fogel, and in her favor, and award her compensatory damages, punitive damages, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

**COUNT VI**

**PLAINTIFF, JESSICA EDWARDS**

**V.**

**DEFENDANT, SCOTT M. FOGEL, IN HIS INDIVIDUAL CAPACITY**

**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

133.   Plaintiff incorporates all prior paragraphs as though set forth fully herein  at length.

134.   On diverse occasions, and through a systematic and continuous course of conduct from 2019 through 2023, Fogel intentionally, deliberately, with malice and hostile intent, inflicted extreme emotional distress upon Plaintiff.

135.   Fogel inflicted extreme emotional distress by:

a.   Disparaging Plaintiff's sexual behavior;

b.   Stating that Plaintiff has a communicable venereal disease;

c.   Subjecting Plaintiff to unwarranted and disproportionate punitive actions at work;

d.   Creating a hostile work environment based upon Plaintiff's gender;

e.   Singling out Plaintiff for adverse treatment due to her gender;

f.   Subjecting Plaintiff to humiliating, arbitrary and absurd work conditions;

g.   Generally harassing, abusing and mistreating Plaintiff;

h.   Abusing his position as Chief of Police to humiliate, degrade, and denigrate Plaintiff;

i.   Withholding favorable work assignments to give Plaintiff opportunities for professional growth and development;

j.   Touching Plaintiff's person, on more than one occasion, without her consent;

k.  Forcefully grabbing Plaintiff's hair and inflicting pain, embarrassment, and distress upon her on more than one occasion;

l.  Wrongfully investigating Plaintiff for a false and long-debunked claim of sexual misconduct, homosexuality, and promiscuity while on duty;

m.  Contacting Plaintiff's doctor's office to demand private, privileged medical information about Plaintiff and/or her minor daughter;

n.  Sending a uniformed police officer to Plaintiff's doctor's office to demand private, privileged medical information about Plaintiff and/or her minor daughter; and

o.  Generally, with deliberation and malicious intent, creating the intolerable working conditions that caused Plaintiff to seek medical treatment and therapy and which drove her to resign from her job, the sole source of livelihood for herself and her family.

136.   Plaintiff suffered such extreme distress, anxiety, and depression as a result of Fogel's deliberate, malicious, cruel and tortious conduct, that she has experienced related physical health problems and has been forced to seek therapy and treatment, which she continues to undergo and will continue to undergo for the indefinite future.

WHEREFORE, Plaintiff requests that this Honorable Court grant Judgment against Defendant, Scott M. Fogel, and in her favor, and award her compensatory damages, punitive damages, damages for delay, and any other relief available at law or equity as deemed appropriate by the Court.

By: _____

Ryan R. Corkery, Esquire
Dean Malik, Esquire
**ANSA ASSUNCAO LLP**
1255 Drummers Lane, Suite 300
Wayne PA, 19087
(267) 528-0750
ryan.corkery@ansalaw.com
dean.malik@ansalaw.com
*Attorneys for Plaintiff*