UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA EDWARDS | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 23-2438 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| LEHIGH TOWNSHIP, and | : | |
| SCOTT M. FOGEL, in his individual | : | |
| Capacity | : | |
| | : | |
| Defendants | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, Lehigh Township and Scott M. Fogel, (collectively, "Defendants"), by and through their undersigned counsel, Marshall Dennehey, P.C., hereby submit this brief in support of their motion for summary judgment, respectfully requesting that this Honorable Court enter summary judgment in their favor, and dismiss the above-captioned matter, with prejudice.

**I.      Procedural History.**

Defendants hereby incorporate by reference, as if fully restated herein, paragraphs 1-19 of their Motion for Summary Judgment.

**II.      Statement of Facts.**

Defendants hereby incorporate by reference, as if fully restated herein, their *STATEMENT OF UNDISPUTED FACTS* ("SUF").

**III.      Standard of Review.**

Defendants offer and rely upon the standard of review relating to motions for summary judgment set forth in *Wilson v. Ebbert*, 2019 WL 1645229, at *1-2 (M.D. Pa. Feb. 26, 2019), and *Breeland v. Cook*, 2014 WL 820167, at *3-4 (M.D. Pa. Mar. 3, 2014).

III.     **Statement of Questions Involved.**

A.     Should summary judgment be entered in favor of Defendant, Lehigh Township, on Plaintiff's claims for Sexual Harassment/Hostile Work Environment under Title VII and the PHRA (Counts I and III)?

*Suggested Answers:    Yes.*

B.     Should summary judgment be entered in favor of Lehigh Township on Plaintiff's claim for constructive discharge/sexual harassment under Title VII (Count II)?

*Suggested Answers:    Yes.*

C.     Should summary judgment be entered in favor of Defendant, Scott M. Fogel, on Plaintiff's claim for intentional infliction of emotional distress (Count VIII)?

*Suggested Answers:    Yes.*

D.     Should summary judgment be entered in favor of Chief Fogel on Plaintiff's claim for defamation (Count VII)?

*Suggested Answers:    Yes.*

E.     Should summary judgment be entered in favor of Chief Fogel on Plaintiff's claim for battery (Count VI)?

*Suggested Answers:    Yes.*

F.     Should summary judgment be entered in favor of Lehigh Township on Plaintiff's retaliation claims under Title VII and the PHRA (Counts IV-V)?

*Suggested Answers:    Yes.*

IV.     **Argument.**

A.     **Summary Judgment should be entered in favor of Defendant, Lehigh Township, on Plaintiff's claims for Sexual Harassment/Hostile Work Environment under Title VII and the PHRA (Counts I and III).**

2

Summary judgment should be entered in favor of Lehigh Township on Counts I and III for Sexual Harassment/Hostile Work Environment under Title VII and the PHRA. All harassment claims predating June 29, 2021, cannot support Plaintiff's causes of action, as the continuing violation theory does not apply here. And the claims post-dating June 29, 2021, are insufficient to support the existence of a hostile work environment. Nevertheless, even if all harassment claims could be considered, they still cannot support Plaintiff's hostile environment action because they are insufficiently severe and pervasive.

      1.     *The same liability standard applies to Plaintiff's Title VII and PHRA claims.*

"The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Weston v. Pennsylvania*, 251 F.3d 420, 426 n. 3 (3d Cir. 2001); *see also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("Generally, the PHRA is applied in accordance with Title VII."); *Davis v. Sheraton Soc'y Hill Hotel*, 907 F. Supp. 896, 899 n. 1 (E.D. Pa. 1995) ("The PHRA is applied to accord with Title VII. For this reason, our discussion under Title VII applies equally to the PHRA claim."). Therefore, this Court should analyze Plaintiff's PHRA and Title VII claims under the same standard.

      2.     *The period of limitations in which a hostile environment claim under must be brought bars claims occurring before July 1, 2021 for the Title VII claim and before October 29, 2021 for the PHRA claim.*

Before filing suit in federal court, a plaintiff must bring a timely charge of discrimination before the EEOC and obtain notice of her right to sue in order to exhaust her administrative remedies. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). In order for a charge to be timely, a plaintiff alleging discrimination under Title VII in Pennsylvania must bring an EEOC charge within 300 days after the alleged unlawful employment practice. *See 42*

*U.S.C. § 2000e-5(e)(1)*; *Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). A plaintiff must file a PHRA claim with the Pennsylvania Human Relations Commission within 180 days of the discriminatory act. *43 P.S. § 959(h)*. Plaintiff dual filed an administrative complaint with the EEOC and the PHRC on April 27, 2022. (SUF, ¶¶ 85-86). Thus, the cut-off date for the Title VII claim is July 1, 2021, and October 29, 2021 for the PHRA claim.

> 3.   *All claims pre-dating July 1, 2021 (Title VII) and October 29, 2021 (PHRA), may not form a basis for Plaintiff's hostile work environment claims, since the continuing violation theory is inapplicable.*

Under the continuing violation doctrine, a plaintiff may pursue claims for discriminatory conduct that occurred prior to the 180-day or 300-day limitations periods "if he [or she] can demonstrate that the act is part of an ongoing practice or pattern of discrimination by the defendant." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' " and "cannot be said to occur on any particular day." *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 115-117 (2002).

In determining whether the continuing violation doctrine applies, the Third Circuit has instructed courts to consider: "(1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett v. Susquehanna County Children & Youth Servs.*, 592 Fed. App'x. 81, 84 (3d Cir. 2014) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.

2001). In considering the subject matter, courts look at "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation." *Budzash v. Howell Twp.*, 451 Fed. App'x. 106, 109 (3d Cir. 2011) (quoting *Cowell*, 263 F.3d at 292). The frequency of the acts is determined by considering whether the acts are recurring "or more in the nature of an isolated work assignment or employment decision." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir. 1997) (quoting *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)). "[C]ourts have not set a standard for how close the acts must occur to amount to a continuing violation." *Bennett*, 592 Fed. App'x. at 84 (citing *Cowell*, 263 F.3d at 295). However, in *West v. Philadelphia Electric Co.*, 45 F.3d 744 (3d Cir. 1995), the Third Circuit "associate[ed] consistency with plaintiff's daily exposure to offensive material." *Id.* (citing *West*, 45 F.3d at 755-756).

This Court has more specifically addressed the "frequency" element of the continuing violation theory in *Sicalidies v. Pathmark Stores, Inc.*, 2000 WL 760439 (E.D. Pa. June 12, 2000), where it held that three (3) months between harassing events, being brush-bys and physical grabbing, precluded the plaintiff from establishing the element of frequency. *Id.* at *6. As this Court further noted:

> [r]ecently, in *Fala v. Perrier*, No. 99–CV–3319, 2000 WL 688175 (E D. Pa. May 25, 2000), this Court addressed the question of whether a continuing violation theory may be applied where a significant period of time passed in between timely and untimely incidents of alleged harassment. In that case, approximately ten months passed between the last timely act of alleged discrimination and the first untimely act. During this hiatus, the plaintiff worked with her alleged harasser and stated that she felt comfortable with him and that she had a good working relationship with him. This Court found that the hiatus between the acts of discrimination destroyed the continuity the plaintiff sought to establish, and precluded the plaintiff from establishing frequency under *West. See also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1998) (holding that seven-month hiatus in between acts of harassment allowed lingering effects of harassment to dissipate and precluded application of continuing violation theory); *Bishop v. National R.R. Passenger Corp.*, 66 F. Supp. 2d 650, 660 (E.D. Pa. 1999) ("For various acts of sexual harassment to be joined together into a single claim ... the acts must be reasonably

close to each other, in time and circumstances, because [a]cts ... so discrete ... that they do not reinforce each other cannot reasonably be linked together into a single claim, a single course of conduct, to defeat the statute of limitations") (quoting *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)).

*Id.*

In the present action, all claims pre-dating July 1, 2021 (Title VII) and October 29, 2021 (PHRA), may not form a basis for Plaintiff's hostile work environment claims, since the continuing violation theory is inapplicable. Plaintiff asserts multiple "harassment" events, spaced out over a three (3) year period from February 2019 until the filing of the PHRC Complaint on April 27, 2022. (SUF, ¶ 85). Here, the harassment alleged by Plaintiff is not of the frequency to permit Plaintiff to use the continuing violation doctrine; the alleged harassment did not occur weekly or even monthly, let alone daily.

Plaintiff argues that the harassment began February 2019, when Chief Fogel commented to another officer regarding a post on Plaintiff's social media; a photograph that he allegedly believed to be too revealing. (SUF, ¶¶ 2-5); *see also Amended Complaint*, at ¶¶ 26-28. Two or three months later, in May or June of 2019, Chief Fogel inquiring regarding her relationship with an officer in the Lehigh Township Police Department, Ofc. D'Alessandro. (SUF, ¶ 6); *see also Amended Complaint*, at ¶¶ 29-31.

A year later, in May of 2020, Chief Fogel allegedly exposed his chest to Plaintiff, showing her the poison ivy he had been suffering from. (SUF, ¶¶ 7-9); *see also Amended Complaint, at ¶¶ 32-35*. Around the same time, in May or June of 2020, Plaintiff alleges that she overheard Chief Fogel making a comment regarding Ofc. D'Alessandro. (SUF, ¶ 11-15); *see also Amended Complaint, at ¶¶ 36-38*.

None of these events post-date July 1, 2021, or October 29, 2021. Additionally, putting aside for the time being that none are sufficient to support a claim for hostile work environment,

6

the foregoing alleged conduct is also not frequent enough to permit Plaintiff to employ the

continuing violation doctrine when the alleged harassment claims are months to a year apart.

Plaintiff should not be permitted to lump these allegedly harassing events to support her hostile

work environment claims.

Following the Spring of 2020, the next alleged harassment (the hair-pulling incidents)

allegedly occurred approximately half a year later in December 2020. (SUF, ¶¶ 16-20); *see also*

*Amended Complaint*, ¶¶ 41-46. December 2020, too, is prior to July 1, 2021 and October 29,

2021. Thus, Plaintiff cannot utilize these alleged incidents without the application of the

continuing theory doctrine. Again, the incidents are too far apart from the other alleged acts of

harassment to be be considered "frequent."

> 4.    *The claims post-dating June 29, 2021, are insufficient to support the existence of a hostile work environment, as they were not severe or pervasive.*

Ten (10) months later, Plaintiff claims that she was harassed on or about October 14,

2021, when Chief Fogel sent out the email regarding "No-Shave November" to all of the

employees of the Department. (SUF, ¶¶ 25-28). This was followed by Chief Fogel allegedly

stating in late-October 2021, that Plaintiff could "shave whatever," which Plaintiff took to mean

her pubic region. (SUF, ¶¶ 30-31). These alleged events would fall conceivably within the

applicable limitations period for Plaintiff's Title VII claim and possibly her PHRA claim, but,

again, they could not be aggregated under the continuing violation theory with the prior alleged

events occurring long before.

She also alleges that, in or around late-October 2021, as part of the accreditation process

for the Department, the employees of the Department were required to view training

presentations on certain subjects, including sexual harassment. (SUF, ¶ 32). In furtherance of this

accreditation requirement, Chief Fogel created a PowerPoint presentation on the topic of sexual

harassment. (SUF, ¶ 33). At the end of the video, there was also an image of a stick figure opening its coat with a pixelated groin area, which was not meant to be offensive, but which, below the image read: "www.dontpullyour----outatwork.obviously." (SUF, ¶¶ 36-38). Plaintiff found the slide disgusting and offensive. (SUF, ¶¶ 39-42).

These alleged events, that should not be aggregated with the purported harassing events occurring before October 2021, are insufficient to support a hostile work environment claim. Summary judgment should be entered in favor of Defendant Lehigh Township on Counts I and III.

In this regard, Title VII and the PHRA[1] make it "an unlawful employment practice for an employer ... to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex … ." *42 U.S.C. § 2000e-2(a)(1)*. Sexual harassment is discrimination based on one's sex. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S 57, 65 (1986). Sexual misconduct, such as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... ," constitutes sexual harassment "where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Id.* (quoting *29 CFR § 16041.11(a)(3)*).

In order to state a claim for a hostile work environment, an employee must show "(1) the employee suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position,

---

[1] The same liability standard governs Title VII and the PHRA. *Weston*, 251 F.3d at 426 n. 3.

and (5) the existence of respondeat superior liability." *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007).

The "[o]ffensive conduct need not necessarily include obvious sexual overtones in order to constitute unlawful harassment or discrimination." *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 412 (D.N.J. 2003) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990)). Instead, only "a showing that [plaintiff's gender was] a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner[ ]" is required. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996).

The workplace at issue must be "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Kimes v. University of Scranton*, 126 F. Supp. 3d 477, 498 (M.D. Pa. 2015). The threshold for pervasiveness and regularity of discriminatory conduct is high. A hostile work environment is actionable under Title VII only if it is so severe and pervasive that it "alters the conditions of the victim's employment" and creates an "abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). The environment must be objectively hostile, not just hostile in the plaintiff's view. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether an environment is sufficiently hostile or abusive is determined by considering the totality of the circumstances, including the "frequency of the conduct; its severity, and whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Breeden*, 532 U.S. at 271 (quotation marks and internal citations omitted); *see also Mock v. Northampton County Sheriff's Department*, 2008 WL 2996714, at *7 (E.D. Pa. August 5, 2008) (same).

"Mere offensive utterances" are insufficient to create a hostile environment, even if they engender offensive feelings in an employee. *Breeden*, 532 U.S. at 271; *see also Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). "[D]iscourtesy or rudeness" that may bother an individual with an eggshell psyche, does not violate Title VII. *Webb v. Merck & Co.*, 450 F. Supp. 2d 582, 598 (E.D. Pa. 2006) (quoting *Faragher*, 524 U.S. at 788); *Waite v. Blair*, 937 F. Supp. 460, 469 (W.D. Pa. 1995). Likewise, simple teasing, offhand comments, and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment. *Breeden*, 532 U.S. at 271 (quoting *Faragher*, 524 U.S. at 786). In *Weston v. Pennsylvania*, the Third Circuit found that a plaintiff's allegation that he was subjected to a series of offensive "comments, jokes and jibes" was insufficient to state a Title VII claim, absent a change in a "term, condition or privilege" in his employment. 251 F.3d at 427-428.

Lastly, discriminatory conduct should "be more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher*, 524 U.S. at 787 n. 1. However, isolated incidents, when extreme, can be enough to change the terms and conditions of employment. *Id.* at 788. *See also Harris*, 510 U.S. at 23.

Here, Plaintiff's claims within the limitations periods do not constitute a hostile work environment. Considering only the three alleged events not barred by the limitations periods applicable to Title VII/PHRA claims, the two hair-pulling claims and the slide presentation claim, Plaintiff was not subjected to the type of frequent, repeated, severe, physically or psychologically impactful incidents that would unreasonably interfere with her work duties and be sufficient to support a Title VII/PHRA claim. It was not severe or pervasive sexual misconduct on the part of Chief Fogel. Simple teasing, offhand comments, and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment. *Breeden*,

532 U.S. at 271 (quoting *Faragher*, 524 U.S. at 786). Even if his conduct was unprofessional, it is insufficient to establish a hostile work environment claim in this matter.

Even considering all of the claimed sexual harassment, the conduct was not sufficiently severe or pervasive to establish a hostile work environment. The alleged misconduct took place over a period of approximately three (3) years beginning in the February 2019. *See gen.* (SUF, ¶¶ 2-42). Plaintiff alleges that a hostile work environment in the Department began to arise in February 2019, when Chief Fogel allegedly made a comment about one of Plaintiff's social post to another officer, alleged instructing the officer to warn her about her social media. *Amended Complaint*, ¶¶ 26-28. As alleged by Plaintiff, the harassment continued with Chief Fogel inquiring as to Plaintiff's relationship with another officer in the Department in the Spring of 2019, (SUF, ¶¶ 2-6), followed by a subsequent event, approximately one (1) year later, in the Spring of 2020 when Chief Fogel alleged exposed his chest to Plaintiff. (SUF, ¶¶ 7-10). Thereafter, in May or June of 2020, Plaintiff allegedly overheard Chief Fogel make a comment to another officer that "I'm surprised Chris' dick hasn't fallen off." (SUF, ¶¶ 11-15). Despite being a comment regarding another individual, Plaintiff took this comment to be directed at her. (SUF, ¶¶ 11-15).

Approximately six (6) months later, in December 2020, Plaintiff claims that Chief Fogel pulled her hair while the two were alone in the Department's office, followed by another instance on December 23, 2020, where he allegedly pulled on her hair that was sticking out of the hat she was wearing while standing in the Township's parking lot and speaking with two other Township employees. (SUF, ¶¶ 16-24). Thereafter, another almost ten (10) months passed, when, on October 14, 2021, Chief Fogel sent out an email regarding the Department's participation in No-Shave November, suggesting that, if the women in the department wished to

participate, they could chose "an alternative to beard growth (for example, hair color streak, shaved head, hairy legs…)." (SUF, ¶¶ 25-31). Shortly thereafter, Chief Fogel commented that Plaintiff could "shave whatever", which Plaintiff purportedly took to mean her pubic region. (SUF, ¶¶ 29-31).

The next event is undated, but alleged to have occurred after the No-Shave November email and comment. (SUF, ¶¶ 32-42). On that occasion, Plaintiff was viewing a training program that included a PowerPoint presentation with multiple slides and a ten-minute recap video created by Chief Fogel. (SUF, ¶ 36). At the end of the video, there was an image of a drawn figure with its coat open and pixelated groin around, with "www.dontpullyour----outatwork.obviously." below the image. (SUF, ¶¶ 37-38).

Again, the foregoing conduct of Chief Fogel does not amount to conduct which is sufficiently hostile or abusive to establish a claim for a hostile work environment. It is undisputed that Plaintiff did not make any sexual advances or sexual propositions to plaintiff, nor did Chief Fogel commit any sexual assault, threats or sexual touching of Plaintiff. Instead, the conduct of Chief Fogel, even viewed in a light most favorable to the Plaintiff, consists of isolated, episodic incidents spanning over a period of three (3) years that did not interfere with her duties or change the terms and conditions of her employment.

In analyzing similar claims, this Court has held conduct that was beyond that which was committed in the instant matter did not rise to the level of severe and egregious conduct required to establish a hostile work environment claim. In *Saidu-Kamara v. Parkway Corp.*, this Court found that conduct occurring over a period of eighteen months consisted of isolated and sporadic incidents of harassment, insufficient to establish a hostile work environment. 155 F. Supp. 2d 436, 440 (E.D. Pa August 31, 2001). There, the claim consisted of events wherein the defendant

allegedly touched the plaintiff's breast, told her she looked "fresh" and propositioned her.

Months later, the defendant made sexually suggestive comments regarding plaintiff's eyes and

offered her financial assistance if she went out with him. *Id.* at 439. Some months later, the

defendant pulled a bottle of wine out of his pants, offered plaintiff a drink, and asked her to join

him at a local hotel for "a good time." During the fourth incident, some additional months later,

the defendant complimented plaintiff on her work, and patted her buttock and breast. *Id.* at 439-

440.

      In granting the defendant's motion for summary judgment on plaintiff's hostile work

environment claim, the Court opined:

> [w]hile Oluwole's purported behavior is loathsome and inappropriate, Plaintiff has at
> best demonstrated sporadic and isolated incidents of harassment. The four specific
> incidents she cites occurred over nearly a year and a half. *See, e.g.*, *Bonora v. UGI
> Utilities*, No. CIV. A. 99–5539, 2000 WL 1539077, at *3–*4 (E.D. Pa. Oct. 18, 2000)
> (supervisor's ten incidents of harassing conduct over two years not frequent enough to
> create hostile work environment); *Cooper–Nicholas v. City of Chester*, No. CIV. A. 95–
> 6493, at *3, 1997 WL 799443 (E.D. Pa. Dec. 30, 1997) (supervisor's comments over
> nineteen months not frequent enough to create hostile work environment). *Moreover,
> none of the events, with the possible exception of the unwelcomed touching, were
> sufficiently severe to rise to the level to make out a hostile work environment claim*. *See,
> e.g.*, *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463–65 (6th Cir. 2000) (supervisor's
> rubbing employee's shoulders, grabbing employee's buttocks, and offensive touching not
> severe enough to create hostile work environment); *Adusumilli v. City of Chicago*, 164
> F.3d 353, 361–62 (7th Cir. 1998) (supervisor's four incidents of unwelcome contact with
> subordinate's arm, fingers, and buttocks, along with repeated sexual jokes aimed at
> subordinate, not severe enough to create hostile work environment); *McGraw v. Wyeth–
> Ayerst Labs. Inc.*, No. CIV. A. 96–5780, 1997 WL 799437, at *6 (E.D. Pa. Dec. 30,
> 1997) (supervisor's repeated requests for date, kissing subordinate without her consent,
> and touching her face not severe enough to create hostile work environment). Although
> Plaintiff also claims that other derogatory comments were made throughout her
> employment, her deposition testimony and answers to interrogatories are nearly silent on
> these matters, vaguely referring only to "comments" without any further detail as to their
> substance or when or how often they occurred. Such comments, including the few
> repeated requests for dates, may have been annoying and undoubtedly unwelcome, but
> they cannot be characterized as patently offensive or severe. *See, e.g.*, *id.*

*Saidu-Kamara*, 155 F. Supp. 2d at 440 (emphasis added).

In the present action, the alleged conduct of Chief Fogel is without question less severe and pervasive than that set forth in *Saidu-Kamara*. It is undisputed that, at no time did Chief Fogel make any sexual comments directed at Plaintiff or engage in any sexual touching or contact with Plaintiff. While the extent of the alleged conduct of Chief Fogel may be considered to be improper, crass, or crude, objectively, it does not raise to the level of that which is required to support a claim for hostile work environment under Title VII or the PHRA. The record shows that the conduct complained of was not sufficiently frequent, severe or pervasive.

In other cases before this Court where the conduct was undoubtedly more serious than that of Chief Fogel, this Court has declined to find that a hostile work environment claim was supported. In *DeCesare v. National R.R. Passenger Corp*., 1999 WL 330258, at *3 (E.D. Pa. May 24, 1999), sexualized comments comments, coupled with staring and sexually suggestive gestures, followed by the defendant becoming critical of Plaintiff's work, becoming unpleasant towards her, and giving her additional unpleasant job duties, were not frequent, repeated, persistent, or severe enough to establish a hostile work environment.  Similarly, in *Cooper-Nicholas v. City of Chester*, 1997 WL 799443, at *3-4 (E.D. Pa. Dec. 30, 1997) the Court found that at least eight (8) sexual comments that occurred over a period of nineteen months were not frequent or sufficiently severe enough to create a hostile work environment, as no comments were about the physical sexual anatomy of the plaintiff or any other employee, no physically threatening conduct occurred, there was no displaying calendars of nude females or viewing photographs of persons in sexual positions, there was no display of sexual objects on desks, and there was no simulation of sexual acts in the workplace.

Likewise, no such severe sexually-charged behavior has occurred in this case, and the conduct alleged was similarly infrequent and sporadic, scattered over a period of three years.

Therefore, the Township is entitled to judgment as a matter of law as to Plaintiff's claims for hostile work environment under Counts I and III of Plaintiff's Amended Complaint.

**B.      Summary judgment should be entered in favor of Lehigh Township on Plaintiff's claim for constructive discharge/sexual harassment under Title VII (Count II).**

Constructive discharges deal with situations in which an employer discriminates against an employee to the point where "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). Such a claim has two elements, first the plaintiff must establish that he or she was discriminated against by his or her employer to the point where a reasonable person in his position would have felt compelled to resign, and that he or she actually resigned. *Id.*

In order to establish a claim for constructive discharge a plaintiff must establish a *greater severity or pervasiveness of harassment than the minimum required to provide a hostile work environment claim. Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n. 4 (3d Cir. 2006). Additionally, it must be shown that the plaintiff's employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citations omitted). Thus, the plaintiff must establish that the alleged discrimination goes beyond the threshold of what is considered intolerable conditions. *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001).

Intolerability is assessed under an objective standard; the question posed is whether a reasonable person in plaintiff's position would have felt compelled to resign. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). Put more directly, whether the plaintiff has no choice but to resign. *Id.* The Third Circuit has noted:

15

'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather, '[i]ntolerability ... is assessed by the objective standard of whether 'a reasonable person' in the employee's position would have felt compelled to resign,'– that is, whether he would have had no choice but to resign.

In determining whether an employee was forced to resign, Courts consider factors including whether whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010).

As set forth herein above, the conduct alleged by Plaintiff in this matter does not rise to a level that could even satisfy the requirements of a hostile work environment claim. Thus, it follows, that Plaintiff certainly cannot maintain her claim for constructive discharge. Beyond this, however, a review of Plaintiff's claims of alleged harassment, coupled with the date of her actual resignation, establishes that Plaintiff's claim fails as a matter of law. Here, it is undisputed that Plaintiff resigned on May 15, 2023. (SUF, ¶ 81). The last alleged harassment incident prior to Plaintiff's resignation occurred, at best, over a year earlier in the Spring of 2022.[2] Plaintiff has failed to set forth any incidents or misconduct in that more than one-year period thereafter. Plaintiff has not set forth facts supporting any claims: that her pay was reduced or that her benefits were curtailed; that she was transferred to less desirable positions; that she had the responsibilities or her job altered; or that she was given unsatisfactory reviews. To the contrary, Sgt. Henry testified that Plaintiff received favorable performance reviews. (SUF, ¶¶ 82-84). Additionally, as Sgt. Henry also testified, Plaintiff was in charge of PFAs for the Department.

---

[2] That is, if one considers the chain of events that led up to Plaintiff's *Loudermill* hearing and two-day suspension to be sexual harassment, which is not supported by the record. *See* (SUF, ¶¶ 43-63).

(SUF, ¶ 84). There are no facts to support that a reasonable person would have felt compelled to resign based on "sexual harassment" were they in Plaintiff's position. As such, Plaintiff's claim for constructive discharge must be dismissed as matter of law.

**C.    Summary judgment should be entered in favor of Chief Fogel on Plaintiff's claim for intentional infliction of emotional distress (Count VIII).**

A claim for intentional infliction of emotional distress requires that plaintiff establish the following elements: (1) conduct of the defendant that is extreme and outrageous; (2) such conduct must be intentional and reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997); *see also Metcalf v. Cramer*, 2023 WL 4051999, at *17 (M.D. Pa. Feb. 24, 2023), report and recommendation adopted, 2023 WL 4108216 (M.D. Pa. May 25, 2023). With respect to the element of "outrageous conduct", Pennsylvania law requires that the alleged conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as outrageous, and utterly intolerable in a civilized society." *Hoy*, 691 A.2d at 754 (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

At the outset, to the extent Plaintiff's claims arose ore than two (2) years prior to the filing of the Complaint on June 26, 2023, as stated herein above, Plaintiff cannot rely on the continuing violation theory to extend the applicable two (2) year statute of limitations as the alleged incident do not meet the frequency requirement.

Beyond the statute of limitations, however, t is well settled that recovery on a claim for intentional infliction of emotional distress is permitted only in the most egregious cases. *Hoy*, at 745  In fact, as applicable to sexual harassment in the work environment, the Third Circuit has noted "it is extremely rare to find conduct in the employment context that will rise to the level of

outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quoting *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir. 1988). The Court of Appeals further addressed this tort in the context of a sexual harassment claim in *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) opining:

> as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress. As we noted in *Cox*, 861 F.2d at 395–96, 'the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.' *See e.g. Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988). The extra factor that is generally required is retaliation for turning down sexual propositions. *See id.* at 310 and cases cited therein.

*Id.*, 895 F.2d at 1487.

This Court applied the foregoing reasoning in granting summary judgement to the defendant on plaintiff's claim for intentional infliction of emotional distress in *McGlone v. Allegheny Valley School*, 556 F. Supp. 2d. 498 (E.D. Pa. May 16, 2008). There, plaintiff alleged that, over a period of one (1) month, the her female supervisor made multiple offensive comments and on multiple occasions had physical contact with the plaintiff. Plaintiff's co-worker made comments such as, "if she had t**ties and an ass like [plaintiff] she wouldn't have to work"; "that a baby would be glad to suck on [plaintiff's] t**ties; "that [plaintiff] wished she had an ass like a black women"; "that 'if she could pimp out [plaintiff] she would be rich' "; "that [plaintiff] and [her other co-worker] were 'lesbians' "; "that 'her husband didn't give her any p*nis in three weeks and that's why she was ready to try a woman' "; and "that 'she hadn't had it in a while, that's why her face was breaking out.' " *Id.*, 556 F. Supp. 2d at 500-501. During that month-long period, her supervisor also "rubbed up against" plaintiff, and stated that "[plaintiff's] ass and breasts were too big, they shouldn't be in the way." *Id.* at 500.

18

There, in analyzing plaintiff's intentional infliction of emotional distress claim, the court stated:

> These alleged incidents are clearly inappropriate, but they are not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' *Cox*, 861 F.2d at 395. Although an employer's conduct may rise to a level of outrageousness necessary for an IIED claim in a sexual harassment case in which an employer retaliates against an employee who turns down a sexual proposition, Figueroa never propositioned McGlone. My finding that this conduct is not extreme or outrageous comports with the Third Circuit's observation that IIED is extremely rare in the employment context. Because the conduct at issue was neither extreme nor outrageous so as to go beyond all possible bounds of decency, McGlone's IIED claim fails as a matter of law.

*Id.*, 556 F. Supp. 2d at 505.

As argued above, Plaintiff's harassment claims do not rise to the level of egregiousness required by to support claims for hostile work environment and constructive discharge. Consequently, it cannot be said that the alleged conduct of Chief Fogel was so "extreme" and "outrageous" as to "go beyond all possible bound of decency." The record, insufficient to establish those claims, also does not sufficiently support a claim for intentional infliction of emotional distress. It is undisputed that Chief Fogel never even made any sexual comments or made any sexual advances to Plaintiff. Even if the record supports that he did, it is undisputed that Plaintiff has not set forth any facts to evidence that Chief Fogel retaliated against her for spurning sexual advances. Without evidence of such retaliation, Plaintiff's sexual harassment claims made in the employment context fail to sufficiently support any claim for intentional infliction of emotional distress here. *Andrews*, 895 F.2d at 1487. Summary judgment is warranted on Count VIII.

**D.    Summary judgment should be entered in favor of Chief Fogel on Plaintiff's defamation claim (Count VII).**

Count VII of Plaintiff's Amended Complaint alleges a claim for defamation against Chief Fogel. *Amended Complaint*, ¶¶ 169-174. In support of this claim, Plaintiff alleges that, in May or June of 2020, she overheard Chief Fogel making a comment regarding Ofc. D'Allesandro in the Department's Office to Det. Enstrom, stating that, "I'm surprised Chris' dick hasn't fallen off." (SUF, ¶¶ 11-14). Plaintiff further testified that, at the time the comment was made, both her and another person were within earshot of Chief Fogel and Det. Enstrom, approximately four (4) feet away. (SUF, ¶ 14). This claim fails because it is barred by the applicable statute of limitations.

The statute of limitations for defamation is one (1) year. *42 Pa. C.S. § 5523*; *see also Menichini v. Grant*, 995 F.2d 1224, 1228 n. 2 (3d Cir. 1993). Under Pennsylvania law, a cause of action for defamation accrues on the date of publication of the defamatory statements." *Easton v. Bristol-Myers Squibb Co.*, 289 F. Supp. 2d 604, 613 (E.D. Pa. 2003). Further, the pursuit of administrative remedies before the EEOC and/or PHRC does not toll the statute of limitations (so the date of the filing of the dual-filed PHRC Complaint is irrelevant. *Chatterjee v. Philadelphia Federation of Teachers*, 214 Fed. App'x. 201, 206 (3d Cir. 2007); *Boyle v. City of Phila.*, 169 F. Supp. 3d 624, 629 n. 36 (E.D. Pa. 2016).

Here, Plaintiff testified that, in May or June 2020, she allegedly overheard the allegedly defamatory conversation between Chief Fogel and Det. Enstrom. (SUF, ¶¶ 11-14). While Chief Fogel disputes that he ever made any such statement, since the alleged date of publication is June 2020 at the latest, Plaintiff's claim for defamation is barred by 42 Pa. C.S. § 5523, as this action was not filed until approximately three (3) years after the alleged publication. Chief Fogel is, therefore, entitled to summary judgment on Plaintiff's defamation action.

**E.    Summary judgment should be entered in favor of Chief Fogel on Plaintiff's claim for battery (Count VI).**

Count VI of Plaintiff's Amended Complaint alleges a claim for battery against Chief Fogel. *Amended Complaint*, ¶¶ 167-168. Specifically, the claim relates to the alleged hair-pulling incident on December 23, 2020. *Id.*; *see also* (SUF, ¶¶ 16-20). Because this claim was not raised until after the expiration of the applicable statute of limitations, Plaintiff's battery claim must be dismissed.

It is well settled that the statute of limitations applicable to claims for battery is two (2) years. *42 Pa. C.S. § 5524*. Again, this limitations period was not tolled by the dual-filed PHRC Complaint. *Chatterjee*, 214 Fed. App'x. at 206; *Boyle*, 169 F. Supp. 3d at 629 n. 36. Any claim for battery as a result of the alleged hair-pulling incident was required to have been filed by December 23, 2022. Plaintiff did not file her civil action until June 26, 2023. Consequently, Plaintiff's action for battery is barred by the statute of limitations. Chief Fogel is entitled to summary judgment on said claim.

**F.      Summary judgment should be entered in favor of Lehigh Township on Plaintiff's retaliation claims under Title VII and the PHRA (Counts IV-V).**

Plaintiff brings Counts IV and V of the Amended Complaint against Defendant, Lehigh Township, for retaliation. The actions contain identical allegations and should be examined under the same standard. The record does not sufficiently support that there was any causal connection between Plaintiff's protected activities and any alleged adverse action that was allegedly taken by Chief Fogel. Summary judgment in favor of Lehigh Township is required.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took adverse action against her after or contemporaneously with her protected activity; and (3) there was a causal connection between her protected activity and the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). If a plaintiff makes this showing, the burden of production shifts to the employer

to present a legitimate, non-retaliatory reason for having taken the adverse action. *Id.* If the employer advances a legitimate, non-retaliatory reason, the burden shifts back to plaintiff to show that the employer's reason was false, and that the adverse action was motivated by retaliation. *Id.* "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times. *Id.*

There are several different ways for a plaintiff to show a causal connection between her protected activity and the adverse action, including suggestive temporal proximity, a pattern of antagonism coupled with timing, or where the record looked at as a whole raises the inference of retaliation. *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). Plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action." *Kachmar*, 109 F.3d at 177.

"While the Third Circuit has not established a bright-line rule for the requisite temporal proximity between protected activity and disciplinary action, it has recognized that a three-month gap between the protected activity and termination is ordinarily not short enough to show an unusually suggestive temporal proximity." *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 312 (W.D. Pa. 2020) (citing *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)). As the court in *Thomas v. Bronco Oilfield Servs.* further explained:

> [A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period. [*Woodson v. Scott Paper Co.*, 109 F.3d 913. 920-921 (3d Cir. 1997)]. In order to demonstrate a 'pattern of antagonism,' Plaintiff must put forth evidence such as a 'constant barrage of written and verbal warnings ... and disciplinary action[s] ... soon after plaintiff's initial complaints.' *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993). A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must 'offer [a] basis for linking the disciplinary actions to her [protected activity].' *Bartos v. MHM Correctional Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011) (citing *Robinson*, 982 F.2d at 895).

*Id.*, 503 F. Supp. 3d at 313.

Applying these legal standards to the record, it is evident that the record does not sufficiently support that there was any causal connection between Plaintiff's protected activities and any alleged adverse action that was allegedly taken against her. Judgment should be entered in favor of Lehigh Township on Counts IV-V of the Amended Complaint.

In the Amended Complaint, Plaintiff sets forth three incidents of retaliation: 1.) Chief Fogel's November 2021 investigation into the reasons she was late for a police training that eventually resulted in a *Loudermill* hearing and Plaintiff's two-day suspension, *Amended Complaint*, ¶¶ 132-139, 150-157; 2.) Chief Fogel's alleged attempts to have Plaintiff placed on a "Giglio" list in August 2022, *Amended See Appx, p. 440a*, ¶¶ 140-145; p. 443a, ¶¶ 158-163; and 3.) Chief Fogel's Spring 2023 investigation into whether Plaintiff carried out an illicit affair with a person from the community. *Amended Complaint*, ¶¶ 146-148, 164-166. There is insufficient evidence that any protected activity by Plaintiff likely caused any of these alleged actions.

For instance, Plaintiff contends that the report that Chief Fogel pulled her hair in a parking lot on December 23, 2020 caused the investigation into why Plaintiff was late for a police training in November 2021. *See Appx*, p. 438a-439a, ¶¶ 132-139; p. 441a-443a, 150-157; (SUF, ¶¶ 18-23). Initially, there is no temporal proximity between the report and the investigation into Plaintiff's tardiness, which did not begin until mid-November 2021, (SUF, ¶¶ 43-51), when Chief Fogel simply requested that Plaintiff provide some type of verification or doctor's note, showing a date and time for where she was on the morning in question. (SUF, ¶ 51). An 11-month gap between protected activity and alleged retaliation is not sufficient to establish a causal relation. *See LeBoon*, 503 F.3d at 233 (three (3) months is not unusually suggestive); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)

(superseded by statute on other grounds as stated in *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187-189 & n. 30 (3d Cir. 2019)) (two (2) months is not unusually suggestive); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three (3) weeks is not unusually suggestive); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (finding that temporal proximity greater than ten (10) days requires supplementary evidence of retaliatory motive).

In addition, there is no evidence that Chief Fogel requested this information to retaliate against Plaintiff. The record shows that the situation escalated to a *Loudermill* hearing because Plaintiff refused to provide the information in response to the limited request, likely because the initial reason she gave for her tardiness was false and she had been caught. (SUF, ¶¶ 53-59). Eventually, after the *Loudermill* hearing and a further arbitration, Plaintiff received a two (2) day suspension for the incident. (SUF, ¶¶ 62-63). Chief Fogel's activity in pursuing the information was justified and not retaliatory.

The second "Giglio" incident that occurred approximately five months after the filing of the PHRC complaint, *See* (SUF, ¶ 88), also lacks temporal proximity. *See LeBoon*, 503 F.3d at 233. Further, the only evidence is that this inquiry was a matter of Chief Fogel performing his due diligence after Plaintiff's insubordination and untruthfulness, *See* (SUF, ¶¶ 43-63), for which she had been suspended. There is no evidence that it was done to retaliate against her due to her PHRC Complaint. Many of the events concerning the inquiry into Plaintiff's tardiness leading up to the inquiry to the District Attorney's Office occurred prior to the PHRC Complaint. In addition, Plaintiff never suffered any adverse action with respect to this alleged conduct as she was never put on the subject list. (*Appx*. p. 252a).

Finally, the investigation into allegations that Plaintiff had engaged in an affair, *See Appx.* p. 441a, ¶¶ 146-148, p. 443a-444a, ¶¶ 164-166, while "on duty" for the Department and was out of the Township while on duty, was not spurred by retaliatory motive but by a March 2023 phone call from the complainant who knew Plaintiff. (SUF, ¶ 89). The investigation was halted when Plaintiff resigned. *Id.* The investigation lacked temporal proximity to the filing of the PHRC Complaint (almost one year later), and there is no evidence that it was an attempt to retaliate, rather than a matter that Chief Fogel was duty-bound to inquire into. No retaliation has been established.

In sum, Plaintiff has failed to sufficiently support her retaliation claims. Summary judgment should be entered in favor of Defendant, Lehigh Township, on Counts IV-V.

**V.    Conclusion.**

For all of the foregoing reasons, summary judgment should be entered in favor of the Defendant, Lehigh Township, on Counts I-V of the Amended Complaint, and in favor of Defendant, Scott M. Fogel, on Counts VI-VIII of the Amended Complaint.

Respectfully submitted,
**MARSHALL DENNEHEY, P.C.**

By:_____
        Patrick J. Boland III, Esquire
        Attorney I.D. No:  PA 75924
        James D. Greco, Esquire
        Attorney I.D. No:  PA 309373
        P.O. Box 3118
        Scranton, PA  18505-3118
        (570) 496-4600

25